**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa M. Cordaro | No. CV-18-03570-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Substituted Plaintiff Jessica Hundley is the surviving child and entitled beneficiary of claimant Theresa Cordaro (Cordaro), who died on October 18, 2019. (Doc. 17.) Plaintiff challenges the denial of Cordaro's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 15, Def. Br.), and Plaintiff's Reply (Doc. 16, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 129–51).

**I.   BACKGROUND**

Cordaro filed an application for Disability Insurance Benefits on September 29, 2014 for a period of disability beginning on March 24, 2014. (R. at 132.) Her claim was denied initially on April 2, 2015, and upon reconsideration on July 2, 2015. (R. at 132.)

Cordaro appeared before the ALJ on March 30, 2017 for a hearing regarding her claim. (R. at 132.) On September 20, 2017, the ALJ denied Cordaro's claim, and on August 30, 2018, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 117–23, 129–51.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Cordaro's disability based on the following severe impairments: (1) lumbar spine degenerative disc disease/spondylosis with sciatica, (2) post-laminectomy syndrome, (3) chronic pain syndrome, and (4) obesity. (R. at 135.) The ALJ also found that Cordaro had the following medically determinable mental impairments: (1) bipolar disorder, in partial remission, (2) generalized anxiety disorder, (3) mood disorder, not otherwise specified, (4) panic disorder without agoraphobia, (5) somatic symptom disorder, and (6) borderline personality disorder. (R. at 135.) However, the ALJ also found that they were not severe because "they do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. at 135.)

Ultimately, the ALJ concluded that Plaintiff was not disabled. (R. at 143.) He determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 138.) Additionally, he determined that Cordaro has the residual functional capacity (RFC) to "perform light work . . . except claimant could frequently climb ramps, stairs and could frequently balance, stoop, kneel and crouch. Claimant could occasionally climb ladders, rope and scaffolds and could occasionally crawl." (R. at 139.) Accordingly, the ALJ found that Cordaro could perform her past work as a preschool teacher. (R. at 142.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises several arguments for the Court's consideration. Plaintiff argues the ALJ erred by: (1) finding Cordaro's mental impairments non-severe; (2) rejecting the opinions of the examining physicians, Dr. Kenneth Littlefield and Dr. Cecilia Drake; (3) rejecting Cordaro's symptom testimony; (4) rejecting the testimony of three lay witnesses; and (5) providing an incomplete hypothetical question to the vocational expert at Cordaro's hearing. The Court agrees with Plaintiff's first three arguments; her remaining arguments are superfluous.[1]

### A. The ALJ errantly analyzed Cordaro's mental impairments because he incorrectly rejected the examining physicians' opinions and Cordaro's testimony.

Cordaro had several mental impairments that were documented in her medical records. (R. at 135.) Her medical records reflect severe symptoms related to her mental impairments, including panic attacks, self-harm, insomnia, mood swings, and anger. (R. at 738–879.) Cordaro testified regarding her mental limitations, including episodes of self-harm, crying spells, and mania. (R. at 191.) Cordaro's mother, father, and friend stated that Cordaro had issues dealing with stress, mania, mood swings, panic attacks, and anxiety. (R. at 466, 468, 521, 525, 528.)

Plaintiff argues that the ALJ's analysis of these impairments was error. (Pl. Br. at 1.) The ALJ determined that Cordaro's mental impairments were nonsevere and did not include any mental limitations in her RFC. (R. at 138–39.) The ALJ based these conclusions on his analysis of Cordaro's activities and the medical evidence. Since these underlying analyses were incorrect, the ALJ's ultimate conclusions regarding Cordaro's mental impairments were incorrect.

---

[1] The ALJ improperly rejected the opinions of three lay witnesses for the same reasons he rejected Cordaro's testimony. (R. at 142.) Thus the Court's analysis of the ALJ's treatment of Cordaro's testimony applies to the lay witness opinions. Further, Plaintiff's final argument is inessential because it impliedly flows from the ALJ's other errors. Because the ALJ improperly rejected certain evidence, he necessarily miscalculated Cordaro's RFC and, consequently, presented an incomplete hypothetical to the vocational expert.

- 4 -

### 1. The ALJ incorrectly determined that Cordaro's mental impairments were nonsevere, but this determination was harmless error.

An ALJ can find that an impairment or combination of impairments is nonsevere only if it has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Only one severe impairment is required for a claimant to survive the step-two severe impairment analysis. *Id*. The ALJ must consider all a claimant's medically determinable impairments when calculating her RFC, regardless of whether they are severe. *Id*.; 20 C.F.R. § 404.1523. Consequently, an ALJ's errant failure to treat an impairment as severe is typically harmless if the claimant survives step-two and the ALJ considers all the severe impairments, severe or otherwise. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Because the ALJ concluded that Cordaro had some severe impairments and survived step-two, his failure to find that her mental impairments were severe is harmless error. Regardless of whether the ALJ characterized Cordaro's mental impairments as severe, he still was required to account for *all* of Cordaro's limitations in formulating her RFC.

### 2. The ALJ errantly rejected the opinions of Cordaro's examining physicians regarding her mental limitations.

Examining physician Dr. Littlefield completed a psychological report and medical source statement on Cordaro's behalf. (R. at 635–40.) Dr. Littlefield diagnosed Cordaro with bipolar disorder I, generalized anxiety disorder, somatic symptom disorder, and borderline personality disorder. (R. at 638.) He described Plaintiff's history of mental impairments and psychological treatment, including her history of suicidal threats and self-mutilation. (R. at 639.) Furthermore, he opined that Cordaro would be unable to sustain normal and appropriate interactions with others in a workplace. (R. at 640.)

Dr. Drake also evaluated Cordaro and completed a mental RFC evaluation on her behalf. (R. at. 952.) She diagnosed Cordaro with bipolar disorder, anxiety, and borderline personality disorder. (R. at 957.) Further, she opined that Cordaro would have moderate to

moderately-severe limitations in (1) sustaining concentration and persistence, (2) social interaction, and (3) adaptation. (R. at 959–60.) These limitations corresponded to Cordaro being off task for over ten percent of each workday. (R. at 959.)

An examining physician's opinion is generally entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. *Id*. Even if the opinion of an examining physician is contradicted by the opinion of another doctor, the examining physician's opinion can only be rejected for specific and legitimate reasons supported by substantial evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ rejected both examining physicians' opinions for three reasons: (1) the opinions were contradicted by the medical evidence, (2) the opinions were inconsistent with Cordaro's daily activities, and (3) the opinions were based on one-time evaluations. (R. at 138.) None of these reasons were sufficient.

First, the medical evidence does not contradict the examining physicians' opinions. The ALJ cited to hundreds of medical records to support his conclusion that "the entirety of the record documents mental status examinations that showed normal affect and normal mood." (R. at 135.) Most of these records are from Cordaro's visits to pain management and physical therapy providers, which were primarily concerned with treating her physical impairments. Moreover, even some of the records the ALJ cited belie his conclusion. For example, an April 2015 record in which Cordaro was described as stable on her medication also included reports of "highs and lows" and "panic attacks." (R. at 649–51.) Overall, the record does not contradict the examining physicians' conclusions; instead, it overwhelmingly supports their conclusions.

Second, the examining physicians' opinions were not inconsistent with Cordaro's daily activities. The ALJ found that Cordaro's reports that she did "nothing" during the day contradicted the physicians' opinions because she, in fact, did more than "nothing." (R. 138.) This reasoning is insufficient. Cordaro's testimony acknowledged that she did

not literally do "nothing". (R. at 173–95.) Instead, she acknowledged that her activities were limited because of her impairments—both physical and mental. (R. at 186, 192.) Dr. Drake and Dr. Littlefield both opined that Cordaro was functionally limited, though not completely incapacitated, because of her mental and physical impairments. Thus, neither opinion is contradicted by Cordaro's activities.

Finally, the ALJ could not reject the opinions simply because they were based on a single examination. Examining physician opinions are generally entitled to greater weight than non-examining physician opinions precisely because the opportunity for examination, even a single examination, tends to lend an opinion increased probative value. Thus, the opinions are worthy of consideration *because* they were based on a single examination of Cordaro. Therefore, every reason the ALJ gave for rejecting the examining physicians' opinions was insufficient.

### 3. The ALJ's reasons for rejecting Cordaro's symptom testimony were unsupported by substantial evidence.

Cordaro testified regarding her various physical and mental impairments. She testified to widespread functional limitations that these impairments caused her, and that she tried to maintain some normal daily activities but that her physical impairments limited her ability to perform or sustain many activities. She also testified about her mental limitations including instances of self-harm, crying spells, and mania. (R. at 190–91.) During the hearing she stood and walked back and forth because of back pain. (R. at 173, 186.)

The ALJ rejected Cordaro's testimony for two reasons.[2] (R. at 140.) First, he found that her testimony was contradicted by her "significant activity level." (R. at 140.) These

---

[2] The ALJ also rejected Cordaro's testimony because it was not fully corroborated by the objective medical evidence. (R. at 140.) This reason alone is insufficient to reject a claimant's testimony. *See Burch*, 400 F.3d at 680 ("In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). Because the Court rejects the ALJ's other reasons, the lack of objective support stands alone, and is therefore insufficient.

- 7 -

activities included parenting her children, attending school meetings, occasionally driving, hosting a birthday party, doing chores, using electronic devices, going to Disneyland, and walking three times per week. (R. at 140.) Second, the ALJ found that Cordaro's treatment of her impairments was conservative and consisted of only pain medication and injection therapy. (R. at 141.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). This is the most demanding standard in Social Security cases. *Id*. at 1015.

The ALJ's first reason for rejecting Cordaro's testimony—that her daily activities were inconsistent with her testimony—is unsupported by substantial evidence. The activities the ALJ cited as being inconsistent with Cordaro's testimony were, in fact, congruent because Cordaro qualified all of the activities as being limited by her impairments. For example, the ALJ cited Cordaro's report that she walked for exercise for three times per week. (R. at 140.) In fact, Cordaro testified that she had given up on exercise because it caused her so much pain. (R. at 189.) Similarly, the ALJ noted that Cordaro went on a family vacation to Disneyland. (R. at 140.) But Cordaro's actual testimony revealed that the trip was difficult, she took extra pain medication, and she left the park early because of pain. (R. at 187.) The ALJ could not reject Cordaro's testimony because of her daily activities since they were not actually inconsistent with her testimony and did not demonstrate an ability to sustain employment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Similarly, the ALJ's finding that Cordaro's medical treatment was conservative is not supported by substantial evidence. Plaintiff correctly notes that epidural steroid injections and medial branch block treatments for her physical impairments are not properly considered conservative. (R. at 18.) *See Garrison*, 759 F.3d at 1015 n.20. Furthermore, the ALJ offered no evidence that Cordaro's treatment of her mental impairments was conservative. Accordingly, the ALJ erred in rejecting her testimony.

### B. The appropriate remedy is to remand Plaintiff's case for computation and payment of benefits.

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. The credit-as-true rule allows for some flexibility and balances efficiency and fairness with the requirement that a claimant actually be disabled in order to receive benefits. *Id*. at 1021. Thus, even if all the rule's requirements are met, the Court may still decline to apply the rule if there is "serious doubt" that the claimant is, in fact, disabled. *Id*.

All of the elements of the credit-as-true rule are met. First, the record is fully developed and remand for additional proceedings would serve no useful purpose. Second, the ALJ made several errors in evaluating Cordaro's claim. The ALJ improperly rejected the examining physicians' opinions and improperly discredited Cordaro's testimony. Consequently, the ALJ did not adequately incorporate Cordaro's mental limitations into her RFC. Finally, if the improperly rejected opinions and testimony were credited as true, the ALJ would be required to find Cordaro was disabled. Dr. Littlefield and Dr. Drake opined to functional limitations that the vocational expert testified would be work-preclusive. (R. at 199, 635–39, 952–62.) Plaintiff also testified regarding limitations that

are work-preclusive. (R. at 194.) If these limitations are credited as true, then Cordaro was disabled.

Finally, there is not serious doubt that Cordaro was disabled. The errors the ALJ made in analyzing her mental impairments were not ancillary to her disability claim. The record demonstrates that her mental impairments and limitations were well-documented and supported, and their validity is not seriously undermined by any of the evidence. Thus the Court remands this case for calculation and payment of benefits.

**IT IS THEREFORE ORDERED** reversing the September 15, 2017 decision of the Administrative Law Judge (R. at 129–51).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits and payment of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 4th day of March, 2020.

Honorable John J. Tuchi
United States District Judge